IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. WASHINGTON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

LORENZO M. WASHINGTON, APPELLANT.

Filed January 21, 2025.    No. A-24-475.

Appeal from the District Court for Douglas County: MARLON A. POLK, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Leslie E. Cavanaugh for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Lorenzo M. Washington appeals his plea-based conviction and sentence for second degree murder. He alleges that the district court for Douglas County abused its discretion by considering photographs of the victim during sentencing, allowing inappropriate victim impact statements to be included in the record, and by imposing an excessive sentence. For the reasons set forth below, we affirm.

## BACKGROUND

On September 7, 2022, the State filed an information charging Washington with first degree murder and first degree sexual assault. The parties eventually reached a plea agreement wherein the State agreed to reduce count one to second degree murder, a Class IB felony, and dismiss the sexual assault charge, and Washington agreed to plead guilty to the amended charge.

- 1 -

Pursuant to this agreement, the State filed an amended information with a single count of second degree murder on April 5, 2024.

At the April 8, 2024, plea hearing, Washington pled guilty to second degree murder. The State provided the following factual basis:

> The evidence would show that on or about June 30th, 2022, through . . . July 3rd, 2022, law enforcement officers were called to [an Omaha residence] after a neighbor reported that the resident at that unit . . . was found deceased. The victim was found unclothed and on the bed in an unnatural position, with numerous bruises covering her body and neck, as well as signs of injury to her genitals and significant injury and tearing to her anus. A forensic nurse on scene determined that the tearing had been consistent with a sexual assault. The victim's cause of death was determined to be manual strangulation.

> Law enforcement officers spoke with multiple witnesses who reported seeing the victim and a male, later identified as the defendant, Lorenzo Washington, together on the evening of June 30th, 202[2]. One witness who had been staying at the victim's residence reported last seeing [Washington] and [the] victim enter her bedroom together. [Washington's] DNA was found on both sides of the victim's neck.

The State also offered, and the court received, exhibit 3, a letter from the Lincoln Regional Center dated September 14, 2023, stating that after four months of treatment, Washington was deemed competent to stand trial. The letter also indicated that Washington was an "unreliable historian" and often provided inconsistent information to the treatment facility. Washington reported that he suffered from auditory and visual hallucinations and that he had multiple psychiatric hospitalizations in the past. He stated that he was diagnosed with bipolar disorder, schizophrenia, and post-traumatic stress disorder. Washington admitted to faking symptoms of schizophrenia to "get on disability." The report also noted that Washington had a history of substance abuse, specifically methamphetamine, and that he refused to follow through with substance abuse treatment.

The court conducted a plea colloquy with Washington, affirming that he understood his rights and was entering his plea freely, knowingly, intelligently, and voluntarily. Washington indicated that he understood that the maximum penalty for a Class IB felony was life imprisonment, and the minimum penalty was 20 years' imprisonment. The court accepted his guilty plea, found him guilty of second degree murder, and ordered a presentence investigation report (PSR).

The PSR revealed that at the time of sentencing, Washington was 33 years old. Washington chose not to participate in the PSR interview, thus limiting the information provided to the probation office. Washington's criminal history dates back to when he was a juvenile. His convictions as an adult include trespassing, disturbing the peace, theft by unlawful taking, lewd conduct, assault and battery, multiple violations of protection orders, obstructing peace officers, and terroristic threats. In April 2019, he began serving a period of post-release supervision on his terroristic threats conviction, but in July 2019, that supervision was revoked, and he served an additional 180 days in jail.

The PSR also included several victim impact statements. The victim's sister provided three statements within which she detailed her grief and mental health struggles following her sister's murder. Various other family members and friends provided handwritten statements as well.

A PSR completed in February 2018 was included in the most recent report. At that time, Washington scored a 37 on the Level of Service/Case Management Inventory, which placed him in the very high risk category for community based interventions. Washington also scored as a high risk candidate on the Domestic Violence Offender Matrix based on a history of possessing weapons and threatening to harm or kill his victims.

Sentencing occurred on June 7, 2024. Washington's counsel asserted that Washington's criminal conduct was largely attributable to his poor mental health. His counsel specifically argued that Washington's schizophrenia had caused "severe psychotic symptoms, suicidal ideations, and homicidal ideation." Counsel noted that Washington had suffered from a paranoid delusion that he was under the control of his stepfather, whom Washington believed had "extraordinary powers of control" and commanded him to do harmful things to others. In response to his delusions, Washington turned to illegal substances to self-medicate.

Washington's counsel also pointed out that at the beginning of the case, Washington was found incompetent to stand trial and was only deemed competent after receiving treatment from an inpatient facility. Counsel emphasized that once Washington was competent, he decided "to take responsibility for his actions" by pleading guilty. Counsel also noted that nothing in Washington's criminal history rose to the level of severity of second degree murder.

The victim's sister then addressed the court. She stated that she suffered from extreme anxiety, insomnia, and post-traumatic stress disorder because of her sister's murder. She also asked to read aloud a letter from "a friend of the family and now a family member." Washington's counsel objected, arguing that "[i]t's fine for the -- to address the Court with her own remarks but that can be submitted as part of the [PSR] and may have already." The court incorporated that letter into the PSR but did not allow the sister to read it aloud.

The State requested that the court also incorporate the autopsy report into the PSR and consider it during sentencing. Washington stated that he had no objection to that document, and the court incorporated it accordingly. The autopsy report indicated that there was bruising on the victim's arms, chest, and legs, as well as abrasions and tearing in the anus, redness in and around the vagina, and marks on the victim's neck.

The State also offered several photographs depicting the crime scene and the victim as she was found by law enforcement. Washington objected, arguing that the photos were difficult to contextualize and that the images would enflame the passions of the court. The State countered that the photos were necessary for the court to obtain a full perspective of what happened to the victim in this case. Ultimately, the court included the photos as part of the PSR but did not receive them as evidence or exhibits.

The State agreed that Washington deserved credit for accepting responsibility and pleading guilty in this case. However, the State emphasized that Washington chose not to participate in the PSR, and consequently, the court did not "have the benefit of getting more information about him or getting a full picture of who he is." Further, the State noted that in the competency report, Washington was described as an unreliable historian and an individual who over-reported mental health symptoms and who had previously faked symptoms of schizophrenia.

The State opined that while the crime scene photos were "very graphic and very difficult to look at," they were necessary "because no words can adequately describe the state of [the victim's] body when the defendant left her." Washington's DNA was found on both sides of the victim's neck, consistent with the cause of death, manual strangulation. Washington's DNA was also present in the victim's anus, which displayed redness and visible tearing. The victim's body was left in an unnatural position that the State described as "startling to see." The State asked the court to impose a significant term of incarceration, as anything less would depreciate the seriousness of the offense and promote disrespect for the law.

Once the matter was submitted, the court made the following remarks:

Mr. Washington, the Court has reviewed your [PSR], and I struggle with even -- in even coming up with the words that are appropriate for this matter, to show the proper respect for [the victim], and I think it was summed up by her family, that no one should have to endure what she endured. That is so far and above and beyond the pale, I, again, am at a loss for words. This is my 19th year doing this, and the facts of this case are as bad as I've ever seen.

The court sentenced Washington to 90 to 95 years' imprisonment with credit for 675 days served.

Washington appeals.

## ASSIGNMENTS OF ERROR

Washington assigns, restated, that the district court abused its discretion by (1) considering photos of the victim when determining his sentence, (2) allowing victim impact testimony in violation of Neb. Rev. Stat. § 81-1848(1)(d) (Cum. Supp. 2022), and (3) imposing an excessive sentence.

## STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Tvrdy*, 315 Neb. 756, 1 N.W.3d 479 (2024). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.* Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *Id.*

Absent an abuse of discretion, an appellate court will not disturb a trial court's rulings as to the source and type of evidence and information that may be used in determining the kind and extent of punishment to be imposed. *State v. Gleaton*, 316 Neb. 114, 3 N.W.3d 334 (2024).

## ANALYSIS

*Consideration of Photographs.*

Washington alleges that the district court abused its discretion by considering photographs of the victim when determining his sentence. He specifically argues that the photographs were not accompanied by an autopsy report that would have given insight as to how and when the victim

- 4 -

received the visible injuries. Washington asserts that the inclusion of the photographs without an accompanying report was "designed to inflame the passions of the court and motivate it to make a decision based on incomplete and misleading evidence." Brief for appellant at 9.

The record clearly refutes Washington's contention that the photographs were received without an autopsy report. The State provided a copy of the autopsy report to the court prior to sentencing and requested the court to receive it at the sentencing hearing. Washington's counsel stated that there was no objection to the receipt of said report. Accordingly, the court incorporated the autopsy report into the PSR and considered it during sentencing alongside the photographs that were received.

Further, the admission of photographs of a gruesome nature rests largely with the discretion of the trial court, which must determine their relevancy and weigh their probative value against their prejudicial effect. *State v. Boswell*, 316 Neb. 542, 5 N.W.3d 747 (2024). An appellate court reviews the decision by a trial court to admit photographs of the victims' bodies for abuse of discretion. *Id.* In a homicide trial, a court may admit into evidence photographs of a victim for identification, to show the condition of the body or the nature and extent of wounds and injuries to it, and to establish malice or intent. *State v. Dubray*, 289 Neb. 208, 854 N.W.2d 584 (2014).

In this case, the district court considered the photographs relevant for purposes of sentencing. At sentencing, the traditional rules of evidence may be relaxed so that the sentencing authority can receive all information pertinent to the imposition of sentence. A sentencing court has broad discretion as to the source and type of evidence and information which may be used in determining the kind and extent of the punishment to be imposed. *State v. McTizic*, 31 Neb. App. 675, 988 N.W.2d 197 (2023). Here, photographs of the victim were received to show the extent of the victim's injuries and the manner in which she died. The photographs taken at the crime scene show the victim's body as it was discovered, lying exposed, in an unnatural position with blood emanating from her mouth. The photographs also depict the nature, extent, and location of the bruising on her body. These facts helped the court to determine the overall nature of the offense and the amount of violence involved in the crime, two factors the court should consider when imposing a sentence. See *State v. Barnes*, 317 Neb. 517, 10 N.W.3d 716 (2024) (in determining sentence to be imposed, relevant factors customarily considered and applied include nature of offense and amount of violence involved in commission of crime).

As the Nebraska Supreme Court has often observed, gruesome crimes produce gruesome photographs. *State v. Britt*, 305 Neb. 363, 940 N.W.2d 270 (2020). The fact that these photographs are gruesome does not, in and of itself, bar their consideration. The photographs depict the appalling nature of this offense and the extreme amount of violence involved in the commission of this crime. They were provided alongside an autopsy report that detailed the various injuries to the victim's body. For these reasons, we conclude that the district court did not abuse its discretion in considering photographs of the victim when determining Washington's sentence.

*Victim Impact Testimony.*

Washington assigns that the district court abused its discretion by allowing certain victim impact testimony in violation of § 81-1848(1)(d). He argues that the three letters from the victim's sister inappropriately characterize the crime and provide recommendations for sentencing. Further,

he argues that another statement has an unidentifiable author, and as such, should have been disregarded.

At the sentencing hearing, Washington did not raise any objections to the sister's statement made to the court or to her letters contained in the PSR. Generally, where no objection is made at a sentencing hearing when a defendant is provided an opportunity to do so, any claimed error is waived and is not preserved for appellate review. *State v. Pereira*, 284 Neb. 982, 824 N.W.2d 706 (2013). Having failed to raise this argument in the district court, Washington has waived this error on appeal.

Washington also failed to object to the victim impact statement he now alleges has an unidentifiable author. Thus, this claim on appeal is also waived. This assignment of error fails.

*Excessive Sentence.*

Washington asserts that the district court imposed an excessive sentence. He argues that the district court failed to consider mitigating factors, including his mentality, experience, and social background. We disagree.

Washington was convicted of second degree murder, a Class IB felony. A Class IB felony carries a minimum term of 20 years' imprisonment and a maximum term of life imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). Washington was sentenced to 90 to 95 years' imprisonment, which falls within the statutory guidelines. Thus, we review his sentence for an abuse of discretion only.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, as is the case here, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors, as well as any applicable legal principles in determining the sentence to be imposed. *State v. Barnes*, 317 Neb. 517, 10 N.W.3d 716 (2024). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.*

The district court stated that it had reviewed the PSR, which included information relevant to Washington's mentality, experience, and social background. Though it may be good practice for district courts to provide a record of their reasoning, the Supreme Court does not require the sentencing court to articulate on the record that it has considered each sentencing factor nor to make specific findings as to the facts pertaining to the factors or the weight given them. *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021). Moreover, Washington chose not to participate in the PSR interview, thus limiting the information the court had access to in the PSR. The district court cannot abuse its discretion by failing to consider information it was not provided.

The facts of this case are, simply put, egregious. The district court noted that the facts were "as bad as [it had] ever seen." The victim invited Washington into her home, where he brutally murdered her. The amount of violence involved in this crime cannot be understated. We find no abuse of discretion in the district court's determination of Washington's sentence.

## CONCLUSION

We find no abuse of discretion in the district court's sentencing determination. We affirm Washington's conviction and sentence.

AFFIRMED.